**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JON JOHNSON, #179845,      *
                                    *

     **Plaintiff,**        *
                                    *

vs.                       *   **CIVIL ACTION NO. 13-0221-KD-B**
                                    *

TONY PATTERSON, *et al.*,  *
                                    *

     **Defendants.**       *

## REPORT AND RECOMMENDATION

Plaintiff Jon Johnson, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint alleging violations of 42 U.S.C. § 1983, 41 U.S.C. § 1985(3) and 18 U.S.C. § 242. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Upon careful consideration, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Johnson's claims are either frivolous or fail to state a claim upon which relief can be granted.

## I.  Amended Complaint. (Doc. 5).

The complaint before the Court is Plaintiff's Court-ordered superseding amended complaint. (Docs. 1, 3, 5). A review of Johnson's amended form complaint reveals that he did not

complete the form in its entirety.  In response to a question on form complaint requesting the name, address, and claim against each Defendant, Johnson refers the Court to an attachment. (Id., at 10).  As a result, the Court is placed in the position of attempting to ferret out from the identity of the Defendants and Plaintiff's description of his claims against each of them. This task is further complicated by Johnson's poor handwriting and by the fact that his allegations consist largely of legal terms and conclusions and references to constitutional amendments and statutes.  In addition, Johnson has provided minimal facts to support his claims.[1]  After a careful review of Johnson's allegations, the Court finds that he is seeking to assert claims against Captain James Powers, Officer T. Hart, Sergeant Valeria Beasley, Lieutenant Penton Ashworth (Doc. 5 at

_____

[1]  For example, Johnson asserts that Defendants Beasley and Ashworth "intentionally conspired, and violated the Plaintiff's 8th and 14th Amendment procedural and substantive due process rights, pursuant to 42 U.S.C. 1983; 42 U.S.C. 1985(3), and 18 U.S.C. 242 as they are provided by the ADOC Administrative Regulation # 403, Sec. (5)(f) and Sec. (5)(g)." (Doc. 5 at 5).

Johnson also asserts that Defendants Patterson and Gibsens "knowingly conspired by failing to correct, address, and remedy their subordinates concerted acts in accordance with Ala. Code 1975, 14-03-13, in violation of the Plaintiff's 8th and 14th Amendment, pursuant to 42 U.S.C. 1983, 42 U.S.C. 1985(3); and 18 U.S.C. 242; which they did acquiescence in their unlawful behavior of well established Alabama legislative laws, sworn procedural duties, and failure to inquire about their subordina[te]s' behavior, is the liability that these supervisor bears." (Id.)

4), Warden Tony Patterson, and Assistant Warden G. Gibsens[2] (Id. at 5).

Johnson alleges that on December 7, 2011, while he was housed at Holman Correctional Facility ("Holman"), he called his mother, Ms. Teanna Webb, on inmate Terry Bradshaw's cellphone. (Id.). Johnson asked his mother, who suffers from Alzheimer's disease, about her health and finding an attorney for his "post-conviction legal matter." (Id., at 6). Johnson contends that as a result of this conversation, inmate "Bradshaw knew that the Plaintiff's mother possessed $1500 of the Plaintiff's money, which he [had] earned from his skillful hobby craft labor, that he sold to correctional officials and inmates." (Id.).

Unbeknownst to Johnson, on that same day, inmate Bradshaw and Defendants Hart and Powers "plotted secretly" and "induced" Johnson's mother to bring Johnson's $1500 in savings and two TV dinners. (Id.). Subsequent thereto, Johnson's mother was arrested, which, he claims, was the result of the their "influence" and "entrap[ment]." (Id.).

According to Johnson, inmate Bradshaw was charged with bribing an officer, and on December 7, 2011, Johnson and inmate Bradshaw both received a disciplinary incident report for a

---

[2] The spelling of this Defendant's name is the Court's best effort, as the name is illegible.

violation of Rule 91 based on the incident concerning the $1500 and the two TV dinners. (Id.). On December 12, 2011, Johnson was served with the incident report, and on December 14, 2011, Defendant Beasley conducted a disciplinary hearing on the charge. (Id., at 7).

Johnson contends that at the disciplinary hearing, inmate Bradshaw admitted his actions with respect to Johnson's mother and the fact that said action were taken without Johnson's knowledge. (Id.). According to Johnson, Defendant Beasley disregarded inmate Bradshaw's self-incriminating statement as well as Johnson's sworn written statement, and found Johnson guilty, which he contends is in violation of the "some evidence" standard. (Id.). Johnson asserts that in the disciplinary report, Defendant Beasley used the boilerplate language "totality of any [sic] evidence" for the reason for her finding, which Plaintiff maintains is insufficient. (Id.). Thus, he argues that she "knowingly conspired" with Defendants Hart and Powers, and thereby deprived Johnson "of his protected rights and entitlement." (Id.).

Johnson also alleges that on December 22, 2011, Defendant Ashworth, who is not a warden or assistant warden, "knowingly acquiesced in the above named Defendants' concerted acts by conspiratorial means of his subordinates['] deprivation of the

Plaintiff's guaranteed constitutional due process rights." (Id., at 7-8). Johnson asserts that he later sought redress from Defendants Patterson and Gibsens with respect to a "grievance and administrative appeal concerning the concerted act by their subordinates[.]" (Id., at 8). However, Defendants Patterson and Gibsens did not comply with their "duties in accordance with Ala. Code 1975, Subsection 14-03-13,[3] and additionally, Johnson's personal property was arbitrarily destroyed or misplaced, and when he complained of these actions; he was arbitrarily transferred to the St. Clair Correctional Facility, because he sought to commence an Internal Intelligence Investigation to remedy his protected constitutional guaranteed rights; thus, he was transferred in retaliation to redress their obvious conspiracy." (Id.).

---

[3] Section 14-3-13 of the Alabama Code provides:

Every officer and guard shall, before entering on the duties of his office, take and subscribe before some officer authorized to administer oaths, the following oath:

'I, .........., do solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States and the Constitution of the State of Alabama, so long as I remain a citizen thereof; that I will faithfully execute and discharge all the duties required of me as ...... (designating the office), and observe all the rules and regulations prescribed for the government of convicts, so far as concerns my office; and will, in no case, ill treat or abuse any convict under my charge or control, nor inflict upon him any other or greater punishment than may be prescribed by said rules and regulations. So help me God.'

According to Johnson, he "need not state all particularities pursuant to his claims; thus, all he need[s] [to] do is state the facts [o]n which complaint rests." (Id.). For relief, Johnson requests compensatory and punitive damages, costs of this action, and "any additional relief this court deems just and appropriate." (Id., at 9).

Johnson did not attach a copy of the disciplinary report referenced in his amended complaint; however he did attach a copy to his original complaint. (Doc. 1 at 17-19). The disciplinary report reflects that Defendant Beasley, the disciplinary hearing officer, found that "[o]n December 7, 2012, . . . , inmate Jon Johnson B/179845 did conspire with inmate Terry Bradshaw W/245565 to have COT Hart pick up two TV dinners and $1500.00 in cash from his (inmate Jonson) mother (Mrs. Webb)." (Id., at 19). According to the report, Defendant Beasley based her findings on the fact that "Captain James Powers stated under oath: that during [the] interrogation of Mrs. Webb, she (Mrs. Webb) admitted that she was bringing the TV dinners and the money to her (Mrs. Webb) son (inmate Jon Johnson B/1799845)." (Id.). These findings by Defendant Beasely in the written disciplinary report contradict Johnson's assertion that Beasley used boiler plate "totality of the evidence," language as the reasons for her findings. Interestingly, the Court was

6

not able to locate the alleged "totality of the evidence" language anywhere in the written disciplinary report. See (Doc. 5 at 7). The record reflects that upon finding Johnson guilty of the offense, Defendant Beasley recommended a disciplinary sentence of thirty days' confinement in disciplinary segregation and forty-five days' loss of store, phone, and visitation privileges. (Id.). Defendant Penton Ashworth approved the recommended disciplinary action. (Id.). There is nothing in the disciplinary report reflecting that the $1,500 and the two TV dinners were confiscated as part of the disciplinary proceedings.

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)

Because Johnson is proceeding *in forma pauperis*, the Court is screening his superseding Amended Complaint (Doc. 5) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id., 490 U.S. at 327, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which

relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

When considering a *pro se* litigant's allegations, a court holds them to a more lenient standard than those of an attorney, Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d

652 (1972), but it does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 791, 710 (11th Cir. 2010) (relying on Iqbal, 556 U.S. 662). A plaintiff's factual allegations are treated as true, but conclusory assertions and a recitation of a cause of action's elements are not. Iqbal, 566 U.S. at 681, 129 S. Ct. at 1951. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

## III. Discussion

### A. Conspiracy Claim Under 42 U.S.C. § 1983

Throughout Johnson's amended complaint, he alleges that various Defendants "conspired." In support of his allegations, Johnson asserts that Defendants Beasley and Ashworth together "conspired", and that Defendants Patterson and Gibsens together "conspired." (Doc. 5 at 5). He also alleges that on December 7, 2011, between 11:00 a.m. and 6:00 p.m., inmate Bradshaw and Defendants Hart and Powers "plotted secretly" to induce Johnson's mother to bring Johnson $1500 and two TV dinners, and with "concerted motive," his mother was arrested. (Id., at 6).

According to Johnson, Defendant Beasley "knowingly conspired with the Defendants, Hart and Powers['] concerted conspiracy that deprived the Plaintiff of his protected right and entitlement." (Id., at 7). Plaintiff also alleges that Defendant Ashworth "knowingly acquiesced in the above named Defendants' concerted acts by conspiratorial means[.]" (Id., at 8).

In order to state a § 1983 conspiracy claim, "a plaintiff must show among other things, that the defendants 'reached an understanding to violate his rights.'" Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) (alteration and citation omitted). This necessitates that a plaintiff provide more than a label or a conclusion. Twombly, 550 U.S. at 555. An agreement to violate a plaintiff's constitutional rights must be shown, AFL-CIO v. City of Miami, Fla., 637 F.3d 1178, 1190-91 (11th Cir. 2011), with sufficient facts to suggest an agreement was made. Twombly, 550 U.S. at 556. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality. . . . [the allegations] must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id., 550 U.S. at 557. In addition to pleading facts that show an agreement was reached to deny a

plaintiff's constitutional rights, an "underlying actual denial of his constitutional right" must be shown. <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1332 (11th Cir. 2008) (alteration omitted).

Johnson's allegations of a conspiracy are plain unadorned assertions that there was a conspiracy or that Defendants conspired or acted in concert.  In one instance, he suggests a time frame of seven hours.  Alleging a broad time frame does not indicate that a meeting occurred and that an agreement was reached to violate Johnson's constitutional or civil rights. Inasmuch as no details were alleged to suggest a conspiracy or an agreement, Johnson's allegations are merely conclusory and do not establish a plausible conspiracy claim.   Accordingly, Johnson has failed to state a conspiracy claim upon which relief can be granted.  His § 1983 conspiracy claim is thus due to be dismissed. <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a vague and conclusory conspiracy claim is subject to dismissal).

### B.  Conspiracy Claim Under 42 U.S.C. § 1985(3)

Johnson identifies 42 U.S.C. § 1985(3) as another statute that provides him a remedy.  "To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities

11

under the laws; and (3) an act in furtherance of the conspiracy (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States." Gibbs v. United States, 517 F. App'x 664, 699 (11th Cir. 2013) (unpublished)[4] (citing Childree v. UAP/GA AG Chem., Inc., 92 F.3d 1140, 1146–47 (11th Cir. 1996)). Like a § 1983 claim, "a § 1985 conspiracy claim requires proof of an agreement." Windham v. City of Fairhope, 2013 U.S. Dist. LEXIS 54203, 2013 WL 1679355 (S.D. Ala. Apr. 16, 2013) (unpublished) (citing cases). Johnson, however, has not provided facts showing that Defendants reached an agreement. Thus, he has failed to state a plausible § 1985(3) claim. Gibbs, 517 F. App'x at 699 (affirming the district court's finding that the allegations do not include any facts that would support an inference that the defendants agreed to act in order to deprive Gibbs of any rights); Kivisto v. Miller, Canfield, Paddock and Stone, PLC, 413 F. App'x 136, 140 (11th Cir.) (affirming the district court's dismissal of the § 1985(3) claim for failure to allege facts that showed an infringement of constitutional or civil rights by a conspiracy) (unpublished), cert. denied, 132

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

S. Ct. 577 (2011).  Accordingly, Johnson has failed to state a plausible claim under § 1985(3).  His § 1985(3) claim is, therefore, due to be dismissed for failure to state a claim.

**C. Claims Under 18 U.S.C. § 242**

Johnson also cites 18 U.S.C. § 242 as another statutory basis for his claims.  This statute is a criminal statute for which no implied private cause of action exists. Fundiller v. City of Cooper City, 578 F. Supp. 303, 306 (D.C. Fla. 1984), rev'd on other grounds, 777 F.2d 1436 (11th Cir. 1985); see Hanna v. Home Ins. Co., 281 F.2d 298, 303 (5th Cir.) ("The sections of Title 18. . . . are criminal in nature and provide no civil remedies."), cert. denied, 365 U.S. 838 (1961); Thibeaux v. United States Attorney Gen., 275 F. App'x 889, 893 (11th Cir. 2008) (unpublished) (section 242 "of Title 18 pertain[s] to criminal law and do[es] not provide a civil cause of action or any civil remedies").  Accordingly, Johnson's claim based on 18 U.S.C. § 242 is frivolous as matter of law.

**D.  Disciplinary Claims**

**1.  Absence of a Liberty Interest**

**a.  "Some Evidence" Standard**

Johnson's primary claim in his amended complaint is that his due process rights were violated when he was found guilty in a disciplinary proceeding because the "some evidence" standard

was not satisfied. The "some evidence" standard referenced by Johnson presumably comes from the Supreme Court's decision in Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). In that case, the Court held that the minimum requirements of procedural due process are satisfied when a prison disciplinary board's decision to revoke good time credits is "supported by some evidence in the record." Id., 472 U.S. at 454. The Court observed that when a prisoner has a liberty interest in good time credits a "modicum of evidence to support the decision . . . will help to prevent arbitrary deprivation[.]" Id., 472 U.S. at 455.

In the Supreme Court's Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) decision, the Court limited providing due process to an inmate to liberty interests created by the States, which "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-222, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990) (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." Sandin, 515
U.S. at 484. The the Supreme Court held that it is necessary to
provide due process to an inmate in only two instances in which
a prisoner may claim a constitutionally protected liberty
interest that is protected by due process: (1) when the inmate's
terms of imprisonment are altered, and (2) when a prison
restraint "imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life."
Id. The Court in Sandin dismissed the argument that "any state
action taken for a punitive reason encroaches upon a liberty
interest under the Due Process Clause[.]" Id.

Johnson does not allege that the length of his sentence has
been altered; thus, his amended complaint does not involve the
first instance identified in Sandin. Thus, Johnson must
demonstrate that he suffered an "atypical and significant
hardship . . . in relation to the ordinary incidents of prison
life" in order to establish that he has been deprived of a
liberty interest, which, in turn, would require that he receive
due process. Id.

Comparing Johnson's placement in disciplinary segregation
for thirty days with decisions from other courts, the
undersigned finds that his disciplinary segregation sentence of
thirty days does not represent an "atypical and significant

hardship" under the Sandin analysis. See Id., 515 U.S. at 486 (finding that Sandin's placement in disciplinary confinement for thirty days did not work a major disruption in his environment); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of constitutionally protected liberty interest).

Furthermore, Johnson's loss of phone, store, and visitation privileges for forty-five days is not an "atypical and significant hardship" under the Sandin analysis. An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. Sandin, 515 U.S. at 485. The further restriction of these privileges for a short period of time is not an "atypical and significant hardship" under the Sandin analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. Id., 515 U.S. at 475, 485. Thus, Johnson does not have a liberty interest in phone, store, and visitation privileges to which due process can attach. Overton v. Bazetta, 539 U.S. 126, 137, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) ("withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. . . . is not a dramatic departure from accepted

16

standards for conditions of confinement"); Kentucky Dept. of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moulds v. Bullard, 452 F. App'x 851, 854 (11th Cir. 2011) (unpublished) (finding the temporary loss of privileges at the Alabama Department of Corrections did not involve a liberty interest); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, 2006 U.S. Dist. LEXIS 83680, 2006 WL 3327663 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest); Dumas v. State, 675 So. 2d 87, 88 (Ala. Crim. App. 1995) (holding that a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges).

Because Johnson did not have a liberty interest that was implicated in the disciplinary proceedings, there was no right to which due process attached. Wilkinson v. Austin, 545 U.S. 209, 220, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) ("The

Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."); see U.S. CONST. amend, XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]). In the absence of a protected interest, due process does not attach. Gray v. Board of Regents of Univ. Sys. of Ga., 150 F.3d 1347, 1350 (11th Cir.), cert. denied, 526 U.S. 1065, 119 S. Ct. 1455, 143 L. Ed. 2d 542 (1999). Because Johnson was not entitled to due process in his disciplinary hearing, his claim that his due process rights were violated because the "some evidence" standard was not satisfied does not state a claim.

### b. Violation of a Regulation

In addition, Johnson briefly mentions that ADOC Regulation 403, Sections (5)(f) and (5)(g) were violated. (Doc. 5 at 5, 7, 8). The record before the Court does include the content of these provisions but the Court deduces from Johnson's brief allegation that they entail a warden's approval of recommended disciplinary action. (Id., at 7-8). Johnson contends that Defendant Ashworth, who approved his disciplinary, is not a warden. (Id.). However, Johnson's allegations do not provide facts that convey a plausible claim for a violation of

constitutional right. At best, Johnson has asserted that Defendants violated a state regulation; however, such a violation does not necessarily demonstrate a violation of the Constitution. Smith v. State of Georgia, 684 F.2d 729, 732 n.6 (11th Cir. 1982) ("Not every violation of a state agency of its own rules rises to the level of a due process infringement."). Inasmuch as Johnson did not have a liberty interest that was impacted by the disciplinary proceeding, and his claim regarding a violation of a regulation sounds in the nature of due process, the Court finds that his claim for a violation of some regulation is not of constitutional magnitude and is, therefore, frivolous. Adams v. Green, 2007 U.S. Dist. LEXIS 44676, 2007 WL 1663094 (M.D. Ala. May 18, 2007) (unpublished).

### 2. Supervisor Disciplinary Claims – *Respondeat Superior*, Appeal and Grievance

Johnson also alleges that Defendants Patterson and Gibsens, as supervisors, failed to correct subordinates' concerted acts and that they acquiesced in and failed to inquire into subordinates' behavior, as required by § 14-3-13 of the Alabama Code. (Doc. 5 at 5). These allegations are not connected to specific facts initially, but later in Johnson's amended complaint, he claims that he filed a grievance and administrative appeal to these Defendants. (Id., at 8). Included with his allegations regarding an appeal and a

grievance are brief allegations that his "personal property" was "arbitrarily destroyed" or "misplaced." (Id.). These brief allegations that are connected to Defendants Patterson and Gibsens are undeveloped and therefore fail to show the necessary facts to allege a claim that is plausible.

Due to the brief and conclusory nature of Johnson's allegations against Defendants Patterson and Gibsens, the exact nature of the claims against them cannot be discerned. In the event that Johnson is seeking to hold Defendants Patterson and Gibsens for the acts of their subordinates, such a basis for liability is not recognized under § 1983. See Monell v. Department of Social Servs., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). In order to hold a supervisor liable under 42 U.S.C. § 1983, "a plaintiff must allege that the supervisor personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). Here, Johnson complains that Defendants Patterson and

Gibsens failed to inquire into and to correct their subordinates' conduct and acquiesced to their subordinates' conduct. Where the conduct of subordinates cause no constitutional deprivation, such as with regard to Johnson's disciplinary, a supervisor cannot be held liable. Id., 738 F.3d at 1249.

Furthermore, Johnson's allegations that concern the filing of an appeal do not present a constitutional claim against Defendants Patterson and Gibsens as the Eleventh Circuit has "never held that prisoners have a constitutional right to an administrative appeal from a disciplinary proceeding." Moulds v. Bullard, 345 F. App'x 387, 389 (11th Cir. 2009), rev'd on other grounds, 452 F. App'x 851 (11th Cir. 2011). In addition, no constitutional right to a grievance system or to receive a response to a grievance exists. Thomas v. Warner, 237 F. App'x 435, at *2 (11th Cir. 2007) (unpublished) (agreeing "with other circuits that have decided that a prisoner does not have constitutionally-protected liberty interest in an inmate grievance procedure"); Baker v. Rexroad, 159 F. App'x 61, at * 1 (11th Cir. 2005) (unpublished opinion) (agreeing with other Circuits that grievance proceedings are not constitutionally mandated), cert. denied, 549 U.S. 840, 27 S. Ct. 94, 166 L. Ed. 2d 69 (2006); see Adams v. Rice, 40 F.3d 72, 75 (4th Cir.)

("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."), cert. denied, 514 U.S. 1022, 115 S. Ct. 1371, 131 L. Ed. 2d 227 (1995); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) ("There is no legitimate claim of entitlement to a grievance procedure."), cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 231 (1988); Chapman v. Louisiana Corrs. Servs., 2010 U.S. Dist. LEXIS 46643, 2010 WL 1929859 (S.D. Ala. Apr. 6, 2010) (unpublished) (The law is settled that there is no constitutional right to receive a response to a grievance.). Inasmuch as no right to a grievance system or to an administrative appeal from a disciplinary exists, Johnson's claims concerning a grievance and an appeal are frivolous.

### E. Non-disciplinary Claims Against Supervisors

#### 1. Absence of Facts

Johnson further alleges that his "personal property was arbitrarily destroyed or misplaced, and when he complained of these actions; the Plaintiff was arbitrarily transferred to the St. Clair Correctional Facility, because he sought to commence an Internal Intelligence Investigation to remedy his protected constitutional guaranteed rights; thus, he was transferred in retaliation to redress their obvious conspiracy." (Doc. 5 at 8). Johnson does not specifically identify the Defendant who is

responsible for his lost property or his transfer. However, the foregoing language is found in a paragraph that initially mentions Defendants Patterson and Gibsens.

On the whole, this brief statement, which makes reference in short order to an arbitrary deprivation of property, an arbitrary transfer, and retaliation, is exceedingly lacking in details identifying the property, the person who took the complained of actions, and the events that would lead one to conclude that the transfer occurred as a result of retaliation. This lack of concrete factual information prevents Johnson from presenting a plausible claim. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (in a § 1983 action, a plaintiff must causally connect a defendant's actions, omissions, customs, policies, or breaches of statutory duty to a deprivation of the plaintiff's constitutional or federal rights in order to state a claim); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (same), cert. denied, 464 U.S. 932, 104 S. Ct. 335, 78 L. Ed. 2d 305 (1983). For this reason, these claims are due to be dismissed for failure to state a claim upon which can be granted.

### 2. Deprivation of Property Claim

In the alternative, Johnson alleges that the taking of his unidentified property was arbitrary. In a § 1983 action, the

23

taking of property only violates the Constitution when it is done without due process of law. Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 1914, 68 L. Ed. 2d 420 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). In Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), the United States Supreme Court held that the deprivation of property by persons acting under color of state law does not constitute a deprivation without due process of law when a predeprivation hearing is impractical and there is available an adequate postdeprivation remedy at the time of the deprivation. Id., 486 U.S. at 532-33. The Hudson Court reasoned that impracticality occurs when the loss of property occurs as a result of a "random, unauthorized act by a state employee," id., 486 U.S. at 532 (quoting Parratt, 451 U.S. at 541), because it is impossible for the State to know beforehand of the deprivation, negligent or intentional, and to provide a predeprivation hearing prior to the loss. Id., 486 U.S. at 533. Some postdeprivation remedies that have satisfied due process are administrative procedures, Parratt, 451 U.S. at 543-44, or ordinary state tort litigation procedures. Hudson, 468 U.S. at 535-36; see Dawson v. City of Montgomery, 2008 U.S. Dist. LEXIS 19833, 2008 WL 659800 (M.D. Ala. Mar. 6, 2008) (unpublished)

(finding that Alabama's conversion statute, Alabama Code § 6-5-260 (1975), is an adequate postdeprivation remedy); <u>Milton v. Espey</u>, 356 So. 2d 1201 (Ala. 1978); ALA. CODE § 6-5-262 (1975). Furthermore, claims for the loss of property incurred at the hands of Alabama state agencies or their employees may be presented for compensation to the Alabama Board of Adjustment pursuant to Alabama Code §§ 41-9-60, *et seq.*

Inasmuch as Johnson describes the taking of his unidentified property as arbitrary and does not identify who took his property, this taking appears to be of a random nature. At the time of this taking, adequate post-deprivation remedies were available to him. Because the law provided a post-deprivation process to Johnson to remedy the taking, no violation of due process occurred. <u>Parratt</u>, 451 U.S. at 543-44 (holding that the adequate postdeprivation remedy only needs to have been available when the deprivation occurred). Considering the law and Johnson's deficient pleading of his claim, the Court concludes that he has failed to state a plausible claim upon which relief can be granted.

### 3. Transfer and Retaliation Claims

Turning to Johnson's claim that he was arbitrarily transferred to St. Clair "to redress their obvious conspiracy" after he complained about the taking and sought to commence an

Internal Intelligence Investigation, the Court finds this claim to be vaguely pled.  Again, Johnson does not indicate who initiated the transfer or to whom he spoke about an investigation.  Nor does he offer facts that tend to show that his transfer was the result of a retaliatory motive and not a typical transfer that prison officials regular undertake in their management of prisons and prisoners.  He further states that the transfer was taken "to redress their obvious conspiracy."  This statement is not at all clear to the Court and is of no moment because Johnson has not assert facts sufficient to establish the existence of a conspiracy.  Thus, his assertion that he was transferred in retaliation for the specified acts appears to be a bald conclusory assertion that is not sufficient to state a plausible claim.

Generally, a federal court does not involve itself in prison administrators' discretionary decisions to transfer an inmate as an inmate does not have a constitutional interest to be or not to be transferred. Meachum v. Fano, 427 U.S. 215, 224, 228-29, 96 S. Ct. 2532, 2540, 49 L. Ed. 2d 451 (1976) ("[T]he Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison. . . [even though] the degree of confinement in one prison may be

quite different from that in another. . . . Neither . . . does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."); see Montayne v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Additionally, "[t]o prove a retaliation claim under the First Amendment, an inmate needs to show (1) that his speech or act was constitutionally protected, (2) that he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act, and (3) that the protected speech or conduct and adverse action were causally connected." Smith v. Governor for Alabama, 2014 U.S. App. LEXIS 6107, 2014 WL 1303920 (11th Cir. Apr. 2, 2014) (upublished) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)). In the present action, no facts are offered demonstrating a causal connection between Johnson's speech and a Defendant's decision to transfer him on account of his speech. Johnson's allegations are just bare assertions that do not

constitute a plausible claim.

In light of the paucity of facts offered in support of this claim and the law governing a transfer claim and a retaliation claim, the Court finds that Johnson has failed to state a plausible claim upon which relief granted.

**F.  Claim for Substantive Due Process**

In addition, Johnson alleges alleged that his substantive due process rights were violated under the Fourteenth Amendment; however, he has not offered any specific facts to support his assertion.  (Doc. 5 at 5). His conclusory assertion was included in the brief paragraph containing the many other sources under which he seeks a remedy.

Substantive due process "protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (quotations omitted).  When bringing a substantive due process claim, "a 'careful description' of the asserted fundamental liberty interest" is required. Id., 521 U.S. at 721 (quotations omitted).  However, a violation of substance due process does not occur when a constitutional amendment "provides an explicit textual source of constitutional protection against" that claim. Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed.

2d 443 (1989). In order to succeed on a substantive due process claim, the defendants' conduct must "shock the conscience." Fantone v. Herbik, 528 F. App'x 123, 129 (3d Cir. 2013). Conduct that shocks the conscience "encompasses only the most egregious official conduct." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (quotations and quotation marks omitted). For example, a claim for a substantive due process violation based on a 35-day confinement in isolation was found not to shock the court's conscience as the court previously had found that fifteen months in segregation was not an atypical and significant hardship and that seven months in disciplinary confinement did not violate a protected liberty interest. Fantone, 528 F. App'x at 129. And a claim for the deprivation of property did not violate substantive due process because state law rather than the Constitution creates property interests. Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010) (finding the taking of an inmate's legal property was not conscious shocking and therefore did not constitute a substantive due process violation); Myers v. Florida, 2014 U.S. Dist. LEXIS 1880, 2014 WL 68067 (N.D. Fla. Jan. 8, 2014) (finding an officer's taking of personal property and legal materials was not a substantive due process violation). In the present action, Johnson's allegations do not convey situations

that are so egregious so as to shock the conscience. Inasmuch as Johnson did not specifically identify the facts that gave rise to a claim for a substantive due process violation, the Court finds that he has failed to state a plausible claim for a substantive due process violation.

### G. Eighth Amendment Claim

Finally, the Court observes that in the paragraph (in the amended complaint) where Johnson conclusorily mentions the statutes and regulations that he contends have been violated, he asserts an Eighth Amendment violation. (Doc. 5 at 5). However, he does not connect any specific facts to a violation of the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citation omitted). It is concerned with the wanton infliction of pain and a defendant's deliberate indifference thereto. Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); Moulds, 345 F. App'x at 392.

Johnson's allegations that are most consistent with a claim for a violation of the Eighth Amendment concern his temporary incarceration in disciplinary segregation and the temporary, additional restrictions on visiting, phone, and store

privileges. However, these restrictions were limited to thirty days and forty-five days, respectively, which this Court found, and other courts have found, are not an "atypical and substantial hardship" on inmate. (Doc. 1 at 19).

In Overton v. Bazzetta, 539 U.S. 126, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003), the Supreme Court held that the regulation's two-year restriction on visitation privileges for an inmate with two-substance abuse violations did not violate the Eighth Amendment. 539 U.S. at 136. Even though the restriction made the prisoner's incarceration more difficult to bear, it did not fall below Eighth Amendment's standards. Id. The Court opined:

> Much of what we have said already about the withdrawal of privileges that incarceration is expected to bring applies here as well. Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement. Cf. Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. See, e.g., Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). If the withdrawal of all visitation privileges were permanent or for a much longer period, or if

31

it were applied in an arbitrary manner to a
particular inmate, the case would present
different considerations.

Id., 539 U.S. at 136-37.

In the present case, Johnson has not informed the Court of

the basis of his Eighth Amendment claim nor does he direct the

claim to a specific Defendant and describe conduct that is

alleged to constitute deliberate indifference.  In view of the

inadequacy of his allegations, and the absence of a physical

injury or pain, the Court finds that Johnson has failed to state

a plausible Eighth Amendment claim.[5]

---

[5] But for Johnson's request for "[a]ny additional relief
this court deems just and appropriate" (Doc. 5 at 9), the Court
would have engaged in an analysis for the dismissal of this
action pursuant to 42 U.S.C. § 1997e(e) because Plaintiff did
not allege a physical injury.  Section 1997e(e) provides:

No Federal civil action may be brought by a
prisoner confined in a jail, prison, or
other correctional facility, for mental or
emotional injury suffered while in custody
without a prior showing of physical injury.

Some courts have liberally construed a request for
additional relief, like that asserted by Plaintiff in this case,
as a request for nominal damages. Boxer X v. Donald, 169 F.
App'x 555, 559 (11th Cir. 2006) (unpublished).  Section 1997e(e)
does not bar the recovery nominal damages, but the amount of the
nominal damages by its very nature is limited to a small amount,
which is usually one dollar. Carey v. Piphus, 435 U.S. 247, 266-
67, 98 S. Ct. 1042, 55 L.Ed.2d 252 (1978) (holding if plaintiffs
were entitled to nominal damages for the mere violation, the
damages should not exceed one dollar); Harrison v. Myers, 2011
U.S. Dist. LEXIS 82738, 2011 WL 3204372 (S.D. Ala. July 13,
2011) (unpublished) (finding that the prisoner's request of

## IV.  Conclusion

Based upon the foregoing reasons, the Court recommends that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Johnson's claims are either frivolous or fail to state a claim upon which relief can be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review

---

$2,500 was not for nominal damages inasmuch nominal damages implies a mere token or trifling).

On the other hand, Plaintiff's request for compensatory and punitive damages is precluded by this section because he did not suffer a physical injury that is greater than *de minimis*. Al-Amin v. Smith, 637 F.3d 1192, 1196-98 (11th Cir. 2011); Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999), opinion vacated by 197 F.3d 1059, opinion reinstated in part by 216 F.3d 970 (11th Cir. 2000).

to plain error review of the magistrate judge's factual findings." <u>Dupree v. Warden, Attorney General, State of Alabama</u>, 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **20th** day of **June, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**